**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Newport News Division**

**GLENN T. MCNAUGHTON,**

       **Plaintiff,**

   **v.**                                    **Civil Action No. 4:12-cv-95**

**LAW OFFICES OF SHAPIRO, BROWN &**
**ALT, LLP, F/K/A LAW OFFICES OF**
**SHAPIRO & BURSON, LLP,**

**And**

**PROFESSIONAL FORECLOSURE CORPORATION**
**OF VIRGINIA,**

       **Defendants.**

**DEFENDANTS' MEMORANDUM IN SUPPORT**
**OF MOTION TO DISMISS COMPLAINT**

Defendants Law Offices of Shapiro, Brown & Alt, LLP, f/k/a Law Offices of Shapiro & Burson, LLP ("SBA"), and Professional Foreclosure Corporation of Virginia ("Professional") by counsel, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, submit this Memorandum in Support of their Motion to Dismiss the Complaint filed against them by Plaintiff, Glenn T. McNaughton ("Plaintiff" or "McNaughton").

## I.    INTRODUCTION

SBA is a law firm.  Professional is a corporation organized to act as substitute trustee and conduct foreclosure sales pursuant to the terms of deeds of trust and notes on which borrowers have defaulted.  This case involves two claims under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692, et seq., against Professional and SBA in connection with pre-foreclosure notices sent by SBA to the Plaintiff.  The gravamen of these counts, by and large, is

the allegation that Bank of America was not the noteholder as of the date of the execution of the appointment of substitute trustee, and therefore, not authorized to appoint Professional as substitute trustee.   Plaintiff asserts, without any factual basis, that E-Trade Financial was the noteholder.    As a result, Plaintiff asserts that the notices of foreclosure were improper. Noticeably absent, however, is any allegation supporting Plaintiff's contention that E-Trade is or was anything other than the investor in the loan as of November 2010, nearly a year after Professional was appointed as substitute trustee.   Plaintiff admits to being in default under the terms of his loan.  Plaintiff does not claim that the secured party did not intend to proceed with foreclosure, or did not authorize the foreclosure.  Nor does Plaintiff identify how the alleged statements constitute material misrepresentations that he relied on to his detriment.

The simple facts are that Plaintiff failed to pay his mortgage debt and, as a result, Bayview Loan Servicing, LLC, pursuant to its rights and duties as loan servicer, at the direction of the beneficiary of the note under Virginia Code §8.3A-205(b), requested that Defendant SBA initiate foreclosure proceedings against him.  SBA and Professional sent proper pre-foreclosure letters and notices, required by Virginia statute and HUD regulation to Plaintiff.  The letters did not contain material misrepresentations.  Moreover, Defendants were acting at the request of Bayview and were, accordingly, entitled to rely on Bayview's direction to foreclose. Accordingly, the Complaint must be dismissed with prejudice.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

1.      Plaintiff is homeowner who resides in Warrenton, Virginia.  (Compl. ¶ 3.)

2.      On or about May 26, 2006, Plaintiff borrowed $669,000.00 (the "Loan") to finance his mortgage, as evidenced by a promissory note ("Note") dated May 26, 2006.  The Note was payable to Bank of America, N.A ("Bank of America").  (Compl. ¶ 7.)  The Note was

2

secured by a Deed of Trust dated May 26, 2006, and recorded in the Clerk's Office of the Circuit Court of Fauquier County.  A true copy of the Deed of Trust is attached hereto as **Exhibit 1**.[1]

3.      Plaintiff's loan was serviced by BAC Home Loan Servicing, LP ("BAC"). (Compl. ¶ 11.)

4.      On or about October 31, 2009, Bank of America entered into a deed of Appointment of Substitute Trustee, pursuant to which Bank of America appointed Professional as substitute trustee under the Deed of Trust.  (Compl. ¶ 36.)  A true copy of the Deed of Appointment of Substitute Trustee is attached hereto as **Exhibit 2**.

4.      In the fall of 2010, Plaintiff sent correspondence to BAC to learn the identity of the owner of his mortgage loan.  In correspondence dated November 26, 2010, Plaintiff alleges that he was advised that the investor of his loan was E-Trade Financial ("E-Trade").  (Compl. ¶ 12.)

5.      Plaintiff regularly made his payments to his servicer until he experienced financial hardship due to the declining economy, at which point he fell behind on his payments. (Compl. ¶ 13.)

6.      On or about June 13, 2011, BAC sent correspondence to Plaintiff advising him that the servicing of his mortgage would be transferred to Bayview Loan Servicing, LLC ("Bayview") effective July 1, 2011.

---

[1] The Complaint references a number of documents that are not attached as exhibits.  To provide the Court with a full record on which to make a ruling, these documents are attached hereto.  In deciding a motion under Rule 12(b)(6), a court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits or incorporated by reference, and matters about which the court may take judicial notice.  *See Witthohn v. Fed. Ins. Co.*, 164 Fed. Appx. 395, 396-97 (4th Cir. 2006) (noting that there are exceptions to the rule that a court may not consider documents outside of the complaint, including that the court may consider documents central to the plaintiff's claim and documents sufficiently referred to in the complaint so long as the authenticity of those documents is not disputed).

7.      Defendant SBA, formerly known as Shapiro & Burson, LLP, is a law firm with offices in Virginia Beach, Virginia.  Plaintiff asserts that SBA's practice includes the collection of debts. (Compl. ¶¶ 4, 6, 15.)

8.      Plaintiff asserts that Defendant Professional is a company whose sole purpose is to serve as the substitute trustee under deeds of trust securing loans that are referred to SBA for foreclosure.  (Compl. ¶5.)  As substitute trustee, Professional regularly conducts foreclosure sales.  *Id.*  The Complaint alleges that Professional is the "alternate voice and alter ego" of SBA. *Id.*

9.      On or about June 16, 2011, Defendant SBA sent Plaintiff a letter advising him that his Loan was in default and had been referred to initiate foreclosure proceedings.  (Compl. ¶ 20; a true copy of the June 16, 2011 letter is attached hereto as **Exhibit 3**.)

10.     The June 16, 2011 letter stated that, as of June 16, 2011, "our client has advised us that the debt is $861,141.16."  The letter further stated that the creditor to whom the debt "is owed is BAC Home Loan Servicing, LP."  (Compl. ¶ 23; Exhibit 3.)

11.     Plaintiff, through counsel, responded to the June 16, 2011 letter in correspondence dated July 6, 2011, disputing the amount of the debt and requesting verification of the creditor to whom the debt was owed.  (Compl. ¶ 27.)

12.     Defendant SBA sent a letter to Plaintiff on or about August 19, 2011 providing reinstatement figures and stating that the original creditor was Bank of America and the current creditor is "Bayview Loan Servicing, LLC for E-Trade Bank."  (Compl. ¶ 28.)

13.     With the August 19, 2011 letter, SBA provided reinstatement figures for the Loan through August 17, 2011 in the total of $221,245.73.  (Compl. ¶ 30.)

14.     On August 29, 2011, Plaintiff received correspondence from his servicer,

Bayview, indicating that the past due amount was $220,795.20. (Compl. ¶31.)

15.     Plaintiff asserts that "these amounts are clearly contradictory of one another, and upon information and belief Defendants representations were false." (Compl.¶ 32.)

16.     Based on these allegations, Plaintiff asserts two causes of action against Defendants.  In Count I, Plaintiff claims that Defendants violated 15 U.S.C. § 1692e, e(2)(A), and/or e(10) by "falsely stating in the June 16, 2011 and August 17, 2011 correspondences the party who the Defendants were attempting to collect the debt on behalf of, the identity of the alleged creditor, and the amounts of the debt that was allegedly owed."

17.     In Count II, Plaintiff asserts that Professional was not properly appointed as substitute trustee because Bank of America was not the beneficiary of the Deed of Trust and/or Noteholder and had no authority to appoint Professional.  (Compl. ¶ 44.)   As a result, asserts Plaintiff, Defendants had no right to attempt to conduct the foreclosure sale.  From that faulty premise, Plaintiff claims that "Defendants" violated 15 U.S.C. §1692f(6), which prohibits nonjudicial action to effect "dispossession or disablement of property."

18.     Defendants file this Motion to Dismiss because the Complaint is woefully lacking in any factual allegations that would support any plausible claim or cause of action against the substitute trustee (who is appointed by the lender, its successors or assigns) for purposes of conducting and carrying out the duties set forth in the Deed of Trust.   Similarly, the Complaint lacks factual allegations to support a claim against the law firm employed by the lender (and/or its successors and/or assigns) solely for purposes of carrying out the directions of the lender to institute foreclosure proceedings.

### III.   ARGUMENT

A.    Standard of Review

A complaint must be dismissed if it fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). Although the Court must accept well-pled allegations in Plaintiffs' Complaint as true, it is not required to accept conclusory factual allegations, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979), and cannot assume that "the [plaintiff] can prove facts which [he or she] has not alleged." *Orcilla v. Bank of Am., N.A.*, 2011 U.S. Dist. Lexis 46639, 4-5 (N.D. Cal. Apr. 25, 2011) (quoting *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526, 103 S. Ct. 897, 74 L. Ed. 2d 723 (1983)).  Nor is the Court required to consider unsupported legal conclusions or legal conclusions disguised as factual allegations.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949-50 (2009); *Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Schweikert v. Bank of America*, 521 F.3d 285, 288 (4th Cir. 2008); *Eastern Shore Markets v. J.D. Associates LTD*, 213 F.3d 175, 180 (4th Cir. 2000).   "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. 662, 129 S.Ct. at 1949.  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.*

Under Rule 12(b)(6), "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). Rather, the "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Id.* (citations omitted). "When the allegations in a complaint,

however true, could not raise a claim of entitlement to relief, 'this basic deficiency should…be exposed at the point of minimum expenditure of time and money by the parties and the court.'" *Id.* at 558 (citation omitted).  In this case, the Complaint is lacking sufficient factual allegations – as opposed to conclusions and labels – to support any cause of action against Defendants.

B.  <u>The Complaint Fails to Allege any Facts to Support the Claim that Professional is an "Alter Ego" of SBA and Alleges No Facts Demonstrating that Professional Took or Failed to Take any Action that constitutes a violation of the FDCPA.</u>

As an initial matter, and reason for dismissing the Complaint in its entirety against Professional, the Complaint fails to allege that Professional took any action that is claimed to be a violation of the FDCPA.  The facts alleged in the Complaint demonstrate that all of the actions (or failures to act) are alleged to have been undertaken by SBA.  The only allegations in the Complaint even addressing any actions by Professional are found in paragraphs 44 and 45, wherein Plaintiff alleges that Bank of America had no power to appoint Professional as a substitute trustee.  The Complaint is entirely devoid of allegations that Professional took any action that might have violated the FDCPA.[2]

In an attempt to circumvent this fact, the Complaint alleges that Professional is "the alternate voice and alter ego" of SBA.  (Compl. ¶5.)  However, Plaintiff alleges no facts whatsoever that would support the proposition that Professional is the "alter ego" of SBA.  Plaintiff's claims against Professional cannot be supported by the naked assertion that Professional is the "alter ego" of SBA without any factual support.  *Iqbal*, 556 U.S. 662, 129 S.Ct. at 1949.

Moreover, Plaintiff misconceives the purpose of the doctrine of "alter ego," which generally is applicable in the context of piercing the corporate veil.  The general rule is that a corporation's distinct corporate identity should be upheld unless there are specific unusual

---

[2] No foreclosure is alleged to have taken place in this case.

circumstances that call for the court to look behind or beyond the corporate structure. *Ost-West-Handel Bruno Bischoff GmbH v. Project Asia Line, Inc.*, 970 F. Supp. 471, 478 (E.D. Va. 1997). Factors that support a finding that one corporation is the alter ego of the other include the gross under-capitalization of the subservient corporation, a failure to observe corporate formalities, insolvency of the subservient corporation, siphoning of funds from one entity to the other, overlapping or non-functioning officers and directors, and common ownership and management. *Id.*, at 478-79; *Road Sprinkler Fitters Local Union No. 669, U.A., AFL-CIO v. Dorn Sprinkler Co.*, 669 F.3d 790, 794 (6th Cir. 2012). Plaintiff, however, alleges none of these facts in the Complaint. Indeed, the only fact Plaintiff alleges in support of his assertion that Professional is the alter ego of SBA is that Professional is appointed to act as substitute trustee for loans that are referred to SBA for foreclosure. (Compl. ¶ 5.) This one fact does not demonstrate or support any of the indicia identified by this Court as supporting a finding of alter ego. Because the Complaint fails to allege any facts to demonstrate that Professional is the alter ego of SBA, and alleges only actions taken by SBA, it must be dismissed in its entirety as against Professional.

  C.  The Complaint Fails to State Claims for Violations of the FDCPA

  Count I alleges violations of the FDCPA, based on Plaintiff's assertions that the June 16, 2011 letter and August 17, 2011 letters sent to him improperly identified the creditor and misrepresented the amount of debt. Count II alleges that Professional was not properly appointed as substitute trustee because Bank of America had no authority to make the appointment. The Complaint fails to allege facts supporting any of the alleged violations of the FDCPA.

  1.  As the loan servicer, BAC was properly named as the Plaintiffs' creditor in the June 16, 2011 letter pursuant to the FDCPA.

  Plaintiff claims that, because the E-Trade Financial was identified as the investor of the

Loan in correspondence he received in November 2010 and the June 16, 2011 letter identified BAC as the creditor, SBA violated 15 U.S.C. § 1692e by falsely identifying the name of the creditor to whom the debt was owed. (Compl. ¶ 40.) In essence, Plaintiff claims that BAC, his loan servicer, was falsely misrepresented as the creditor on SBA's initial communication. Plaintiff's contention fails however, because a loan servicer fits the definition for a "creditor" under the FDCPA.[3]

As an initial matter, a loan servicer typically is a "creditor," and not a debt collector, because it obtains regular payments from the consumer. Federal law describes BAC's servicing responsibility to include,

> receiving any scheduled periodic payments from a borrower pursuant to the terms of any mortgage loan… and making the payments to the owner of the loan or other third parties of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the mortgage servicing loan documents or servicing contract.

12 U.S.C. § 3500.2(b); *see also Larota-Florez v. Goldman Sachs Mortgage Co.*, 719 F.Supp 2d 636, 640-41 (E.D. Va. 2010), *aff'd per curium* at Appeal No. 10-1523 (4th Cir. July 28, 2011) ("As servicer, Litton has the *right to collect payments* on behalf of the holder and the right to foreclose upon default.") (emphasis added); *CWCapital Asset Management, LLC v. Chicago Properties, LLC*, 610 F.3d 497, 500 (7th Cir. 2010) (explaining the necessary role of servicers: "[e]very mortgage needs someone to collect the borrower's monthly payments of principal and interest; make sure the property is properly insured; attend to any default, either by suing the borrower and if necessary foreclosing the mortgage or by modifying the mortgage to make its terms less onerous to the borrower; and discharge the mortgage when it is paid off[.]").

A "creditor" under the FDCPA is defined as "any person who offers or extends credit

---

[3] Plaintiffs claim also fails because there is no allegation that Professional sent any communication to Plaintiffs. As noted above, the Complaint identifies only letters sent by SBA.

creating a debt or *to whom a debt is owed*, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another." 15 U.S.C. § 1692a(4) (emphasis added). Notably, the FDCPA does not define creditor to be the owner of the loan. Thus, by statute the term "creditor" includes assignees who obtained their rights prior to a default. *See* 15 U.S.C. §1692(a)(4). Because federal law recognizes that the consumer directly owes the debt to the servicer, the servicer's status as "debt collector" versus "creditor" is determined by the loan's default status at the time it acquires its servicing rights. *See* 15 USC § 1692a(4). Plaintiffs do not allege that the Loan was in default when BAC obtained its servicing rights. As Plaintiffs' admit, BAC was the proper party to whom payments were to be made and to whom payments were owed. (Compl. ¶ 13.) Therefore, BAC is a "creditor" within the meaning of the FDCPA. *See Martin v. Select Portfolio Servicing*, 2008 U.S. Dist. LEXIS 16088, at *9 (S.D. Ohio Mar. 3, 2008) ("[a]n entity which does not own the loan but merely "services" the loan is treated as a "creditor" and generally is not subject to the FDCPA." (citations omitted)); *Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 106 (6th Cir. 1996) (where debt was assigned for servicing before default of the loan, assignee is exempt from the Act because the assignee becomes a creditor and is collecting its own debt); *Bilal v. Chase Manhattan Mort. Corp.*, 2006 U.S. Dist. LEXIS 39040, at *9-11 (N.D. Ill. June 13, 2006) (granting mortgage servicer's motion to dismiss because the servicer was a creditor, not a debt collector, under the FDCPA); *Glazer v. Chase Home Fin., LLC*, 2009 U.S. Dist. LEXIS 126369, at *20-21 (N.D. Ohio Jan. 21, 2010) ("Therefore, Chase, as the servicer prior to default, should be treated as a 'creditor" and not subject to the FDCPA.").

Moreover, at least four courts of appeals have concluded that a servicing agent for a

mortgage loan "obtains" the debt even though the bank owns the note. *Carter v. AMC, LLC*, 645 F.3d 840, 843 (7th Cir. 2011); *Bailey v. Security National Servicing Corp.*, 154 F.3d 384, 387-88 (7th Cir. 1998); *Alibrandi v. Financail Outsourcing Services, Inc¸* 333 F.3d 82, 84-85 (2d Cir. 2003); *Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 107 (6th Cir. 1996); *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985). "[A]lthough one usually 'obtains' a debt by purchasing it, that is not the only way to do so. A servicing agent 'obtains' a debt in the sense that it acquires the authority to collect the money on behalf of another." *Carter*, 645 F.3d. at 844. Thus, BAC – the servicer who acquired its rights when the Loan was not in default – was not only tasked by federal law to collect loan payments from the Plaintiff, but also "obtained" the debt from the debt's owner and had the right to bring suit to collect the debt in its own name. Because BAC is the entity to whom Plaintiff was obligated to pay his mortgage debt at the time SBA sent the June 16, 2011 letter, BAC fits the FDCPA's definition of a creditor. Accordingly, Defendants cannot be liable for violations of the FDCPA based on SBA's letter identifying BAC as the creditor.

2. <u>Any alleged misrepresentation contained the June 16, 2011 was immaterial</u>

Moreover, the Fourth Circuit applies the "least sophisticated consumer" standard to determine whether the text of a letter violates the FDCPA. *Morgan v. Credit Adjustment Bd.*, 999 F. Supp. 803, 805 (E.D. Va. 1998). "While protecting naive consumers, the standard also prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding …." *Id*. Under this standard, the "creditor to whom the debt is owed" is simply the person to whom the debtor is required to make payments. This interpretation is consistent with an unsophisticated consumer's understanding of the mortgage lending industry, as well as the purpose of including the name of

11

the creditor to whom the debt is owed in the letter, which is specifically to permit a debtor to make-up for his delinquency. *See, e.g.*, *Luzinski v. Arrow Fin. Servs., LLC.*, No. 05-cv-1322, 2007 U.S. Dist. LEXIS 71788, at *3 (E.D. Wis. Sept. 26, 2007) (dismissing plaintiff's claims holding a dunning letter that identifies the servicer to whom the debtor's payments are made does not violate the FDCPA).

Consistent with the express purpose of the FDCPA to eliminate deceit and confusion of consumers, courts hold that the debt collector is not required to follow the FDCPA language blindly when such blind or hyper-technical compliance results in meaningless and confusing representations to consumers. *See, e.g., Shimek v. Weissman, Nowack, Curry & Wilco, P.C.*, 323 F. Supp. 2d 1344, 1348-1349 (N.D. Ga. 2003) (concluding that an "an offer to provide information about a non-existent original creditor would in itself be a violation of the FDCPA because it would mislead consumers"); *accord Volden v. Innovative Fin. Sys.*, 440 F.3d 947, 956 (8th Cir. S.D. 2006) (holding that the debt collector did not violate FDCPA when it failed to include the required disclosures regarding the name and address of the original creditor because the inclusion of the FDCPA-required language would be "technical," "meaningless," and "would have provided absolutely no useful information [to the consumer]"). Accordingly, Defendants did not violate the FDCPA as a result of the June 16, 2011 letter identifying BAC as the creditor.

Moreover, any such alleged misrepresentation cannot have been material and Plaintiff does not allege that he suffered any damages as a result. Indeed, Plaintiff fails entirely to assert that he relied in any way on the alleged misrepresentation to his detriment. Instead, he continued to deal with BAC as his creditor and never disputed its right to collect the debt. Thus, even if the statement was false, the alleged misrepresentation that BAC was the creditor is immaterial. Accordingly, Plaintiffs have no claim under the FDCPA, and Count I should be dismissed.

3.      The August 19, 2011 letter properly identified the creditor as E-Trade
        Bank and was not in any way misleading, let alone materially misleading

Plaintiff apparently also contends that the August 19, 2011 letter misrepresented the

identity of the alleged creditor. (Compl. ¶ 40.)  However, the August 19, 2011 letter specifically

stated that the current creditor is "Bayview Loan Servicing, LLC  . . . as servicer for E-Trade

Bank."  (Compl. ¶ 28.)  Given that Plaintiff asserts in the Complaint that the proper creditor is E-

Trade, it is difficult to see how the August 19, 2011 letter can be considered a misrepresentation.

To the contrary, the August 19, 2011 letter clearly identifies Bayview as the loan servicer and E-

Trade as the owner of the Loan.  The Plaintiff's own allegations demonstrate that SBA did not

misrepresent anything in the August 19, 2011 letter.

Moreover, as noted above, to the extent that the statements in the August 19, 2011 letter

could be construed as a misrepresentation, they are not material, particularly given that the letter

identifies E-Trade, the proper creditor according to Plaintiff.   The Fourth Circuit recently

acknowledged that the materiality standard applies to allegations of false statements under the

FDCPA by alleged debt collectors:

> Although Congress did not expressly require that any violation of § 1692e
> be material, courts have generally held that violations grounded in "false
> representations" must rest on material misrepresentations. For example,
> analyzing an alleged violation of § 1692e(2), which prohibits a "false
> representation of the character, amount, or legal status of any debt," the
> Seventh Circuit reasoned that the  Act "is designed to provide information
> that helps consumers to choose intelligently," and thus held that because
> "[a] statement cannot mislead unless it is material, . . . a false but non-
> material statement is not actionable."

*Warren v. Sessoms & Rogers, P.A.*, 2012 U.S. App. Lexis 552, 18-19 (4th Cir. 2012) (citations

omitted); *see also Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1033 (9th Cir. 2010) ("false

but non-material representations are not likely to mislead the least sophisticated consumer and

therefore are not actionable under §§ 1692e or 1692f."); *Miller v. Javitch, Block & Rathbone*,

561 F.3d 588, 596 (6th Cir. 2009); *Hahn v. Triumph Partnerships LLC*, 557 F.3d 755, 757-59

(7th Cir. 2009); *Diaz v. United Collection Bureau*, 2011 U.S. Dist. Lexis 64815 (N.D. Cal. June

16, 2011) ("False but non-material misrepresentations are not likely to mislead the least

sophisticated consumer, and therefore are not actionable under the FDCPA."); *Stewart v.

Bierman*, 2012 U.S. Dist. LEXIS 64355 (D. Md. May 8, 2012) ("This Court is persuaded that the

Fourth Circuit's citations of Hahn, Donohue, and Miller leads to the conclusion that in order to

overcome a motion to dismiss a FDCPA claim that involves a false representation, a complaint

'must contain sufficient factual matter, accepted as true,' that the alleged false representations

were material.")

Plaintiff alleges that of his Loan was Impac.  (Compl. ¶ 12.)  He also alleges that he had

been advised by BAC that the servicing for his Loan would transfer to Bayview as of July 1,

2011.  (Compl. ¶ 14.)  Accordingly, when he received the August 19, 2011 letter identifying

Bayview as the servicer and E-Trade as the owner of the Loan, the letter could have done

nothing more than to confirm the knowledge he already possessed.  In no way could Plaintiff

have been misled as to the identity of either Bayview or E-Trade.  Accordingly, the Complaint

fails to state a claim under the FDCPA with respect to the identity of the creditor in the August

19, 2011 letter.

   3.  <u>The June 16, 2011 and August 19, 2011 letters did not misrepresent the
amount of the debt</u>.

Plaintiff asserts that both the June 16, 2011 letter and the August 19, 2011 letter

misrepresented the amount of the debt.  Specifically, Plaintiff asserts – with no factual support

whatsoever – that, "[u]pon information and belief, the June 16, 2011 letter falsely states the

actual amount of the debt that is due."  (Compl. ¶ 24.)  This bald and unsupported allegation is

far too slender a reed on which to base a claim for statutory violations alleging

20034797v1

misrepresentation.   It is impossible for Defendants to counter this allegation when Plaintiff is unable to identify why the amount stated is incorrect.   This is precisely the sort of pleading allegation that the United States Supreme Court addressed in *Iqbal* when it held that a complaint does not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. 662, 129 S.Ct. at 1949.   Indeed, Plaintiff's allegation is a classic example of a naked assertion that is entirely devoid of any further factual support.   For this reason alone, Plaintiff's Complaint fails to state a cause of action for misrepresentation based on the June 16, 2011 letter.

Even if the allegation were sufficient, the June 16, 2011 letter specifically notes that SBA has been advised by its client that the amount of the debt is as stated.   The United States Court of Appeals for the Fourth Circuit and the United States District Court for the Eastern District of Virginia have held that debt collectors are entitled to rely on the information provided to them by the client and that the FDCPA does not require debt collectors to conduct an independent investigation of such information.   *Amond v. Brincefield, Hartnett & Assocs., P.C.*, 1999 U.S. App. LEXIS 4815, *7-9 (4th Cir. Va. Mar. 22, 1999) (dismissing plaintiff's claim that the debt collector was not entitled to rely on the bank's statement of amount); *McLean v. Ray*, 2011 U.S. Dist. LEXIS 53663, 17-18 (E.D. Va. May 18, 2011) (holding that the debt collector could rely on the creditor's representations regarding the debt).   In *Amond*, plaintiff argued that the debt collector violated its duties under the FDCPA by failing to investigate the validity and amount of the debt.   1999 U.S. App. LEXIS 4815 at *7.   The court rejected plaintiff's argument and held that even the debt collector's status as an attorney does not add a requirement of independent analysis for each aspect of the creditor's claim.   *Id.* at *8 (citing *Jenkins v. Heintz*, 124 F.3d 824, 833-34 (7th Cir. 1997)).   Accordingly, the court dismissed plaintiff's FDCPA claim.   *Id.* at *9.

Federal courts in other jurisdictions have consistently reached the same conclusion and dismissed plaintiffs' claims that the debt collector misrepresented the validity of the debt or its amount when the debt collector relied on the information provided to it by the creditor. *See, e.g., Randolph v. IBMS, Inc.*, 368 F.3d 726 (7th Cir. 2004) (holding that "Courts do not impute to debt collectors other information that may be in creditors' files-for example, that debt has been paid or was bogus to start with"); *Slanina v. United Recovery Sys., LP*, Case No. 3:11-CV-1391, 2011 U.S. Dist. LEXIS 121356, *8 (M.D. Pa. Oct. 20, 2011) (dismissing plaintiff's FDCPA claim *not* because a bona fide error defense applied but because debt collector has not duty to verify debt validity before it initiates debt collection); *Hyman v. Tate*, 362 F.3d 965, 968 (7th Cir. 2004) (debt collector was not required to verify that the debt was not in bankruptcy but was entitled to rely on the creditor's representations instead); *Ducrest v. Alco Collections*, 931 F.Supp. 459, 462 (M.D.La.1996) ("[t]he FDCPA does not require an independent investigation of the information provided by clients when a debt collector tries to collect a debt, nor does it require the debt collector to dispute the creditor's construction of a contract."); *see also Smith v. Transworld Sys., Inc.*, 953 F.2d 1025, 1032 (6th Cir. 1992) (statute does not require an independent investigation of the debt referred for collection; instead, the FDCPA requires the maintenance of procedures reasonably adapted to avoid any such error.). Although creditors may possess additional information regarding the loan, the FDCPA does not automatically impute such knowledge to debt collectors. *See, e.g., Lynch v. Nelson Watson & Assocs., LLC*, Case No. 10-cv-2025, 2011 U.S. Dist. LEXIS 66031 (D. Kan. June 21, 2011) (dismissing plaintiff's FDCPA claim because any knowledge that the creditor had regarding plaintiff's representation by an attorney could not be imputed to the defendant debt collector). Accordingly, SBA was entitled to rely on the

information it received from its client and cannot be liable under the FDCPA for the amount stated in the June 16, 2011 letter.

Plaintiff also alleges that SBA misrepresented the amount of the debt in its August 19, 2011 communication.  The August 19, 2011 letter provided reinstatement figures for the Loan through August 17, 2011 of $221,245.73.  These figures are broken out and clearly include foreclosure costs and attorneys' fees, as well as late charges.  (Compl. ¶ 30.)  Plaintiff asserts that, on August 29, 2011, he received a letter from Bayview indicating that the "past due amount" on the Loan was $220,795.20.  (Compl. ¶ 31.)  Based on the alleged discrepancy between these figures, Plaintiff asserts that "[t]hese amounts are clearly contradictory of one another, and upon information and belief Defendants representations were false." (Compl. ¶ 32.) Again, as a factual matter, Plaintiff's allegations alone show that there is not misrepresentation of the amount due.  The August 19, 2011 letter clearly indicates that the figure provided is a "reinstatement" figure.  It is not the "past due amount," which varies from the reinstatement figure because it does not include costs and fees associated with the foreclosure.  Thus, it is entirely consistent that the two figures are different.  Plaintiff's allegations simply do not support a plausible claim that SBA misrepresented the amount due in the August 19, 2011 letter. Moreover, as set forth above, even if the allegation were sufficient, SBA was entitled to rely on its client in providing the figures.  The FDCPA does not require debt collectors to conduct an independent investigation of such information.  *Amond*, 1999 U.S. App. LEXIS 4815, *7-9; *McLean*, 2011 U.S. Dist. LEXIS 53663, at *17-18 (debt collector could rely on the creditor's representations regarding the debt).    Accordingly, Plaintiff's claims that Defendants misrepresented the amount of the debt must be dismissed.

4.      <u>Professional was properly appointed as substitute trustee and the Complaint wholly fails to contain allegations supporting Plaintiff's contention that Bank of America was not authorized to appoint Professional</u>.

Count II of the Complaint rests upon the faulty premise that Bank of America was not authorized to appoint and did not validly appoint the trustee.  Although Plaintiff admits that Bank of America was the original holder of his Note (Compl. ¶ 7), he claims the appointment is invalid because Bank of America was not the owner of the Loan (Compl. ¶ 37).  Instead, Plaintiff claims that the holder of the Note was E-Trade Financial.  *Id.*  Factually, the challenge to the appointment of the trustee (and the right of the trustee to foreclose), is belied by the Appointment of Substitute Trustee itself, attached hereto as **<u>Exhibit 2</u>**.  The Appointment of Substitute Trustee was executed on or about October 30, 2009.  The Complaint alleges only that Plaintiff discovered in November of 2010 that the investor of his Loan was E-Trade Financial.  (Compl. ¶ 12.)  The documents demonstrate that Bank of America was the original lender and beneficiary under the Deed of Trust executed in May 2006.  (Compl. ¶ 7; **<u>Exhibit 1</u>**.)  Accordingly, the Complaint fails entirely to allege that E-Trade was the holder of the Note in 2009, when the Appointment of Substitute Trustee was executed and recorded.  Instead, the only allegation is that E-Trade Financial was the "investor" of the Loan as of November 26, 2010.  Accordingly, the Complaint is entirely devoid of any factual allegation supporting the proposition that Bank of America was not authorized to execute the Appointment of Substitute Trustee.

Further, to the extent that Plaintiff implies that only the owner of a loan can foreclose, such contention is contradicted by Virginia law.  Virginia law provides that a foreclosure may be prosecuted by the beneficiary under the deed of trust, see Va. Code §55-59(9) which would include any nominee of the lender, the noteholder or its agent.  *Tapia v. United States Bank*, *N.A.*, 2010 U.S. Dist. LEXIS 62448, 19-20 (E.D. Va. June 22, 2010), *Horvath v. Bank of N.Y.*,

18

*N.A.*, 641 F.3d 617 (4th Cir. 2011).   This includes the loan servicer, *see Larota-Florez v. Goldman Sachs Mortgage Co.*, 719 F. Supp 2d 636, 640-41 (E.D. Va. 2010), aff'd per curium at Appeal No. 10-1523 (4th Cir July 28, 2011), or a non-holder in possession with rights of holder. *See* Va. Code 8.3A-301(ii); Va. Code 8.3A-203(b).   Indeed, Plaintiff confuses the distinction between the owner or investor of a note or underlying debt, versus its holder. Under the Commercial Code, a party entitled to enforce the note need not be the owner of the underlying debt.   The comments to the Commercial Code explain that: "[t]he right to enforce an instrument and ownership of the instrument are two different concepts. . . . Ownership rights in instruments may be determined by the principles of the law of property, independent of Title 3, which do not depend upon whether the instrument was transferred under Section 3-203."   Virginia Code, §8.3A-203, Official Comment 1.   Under Virginia Code §8.3A-301, the right to enforce a promissory note inures to its holder, not its owner.

Generally, the terms of industry standard promissory notes secured by residential real estate indicate that "[t]he lender or anyone who takes this Note by transfer and who is entitled to receive payment is called the 'noteholder,'" which would allow enforcement by a non-holder in possession with rights of a holder.  *See* Va. Code 8.3A-301(ii); Va. Code 8.3A-203(b).  Thus, in a foreclosure challenge under Virginia law, the United States Court of Appeals for the Fourth Circuit explained that "[n]egotiable instruments like mortgage notes that are endorsed in blank may be freely transferred. And once transferred, the old adage about possession being nine-tenths of the law is, if anything, an understatement. Whoever possesses an instrument endorsed in blank has full power to enforce it." *Horvath*, 641 F.3d at 621; *see also Bolouri v. Bank of America, N.A. et al.*, No. 1:10- cv-00225-LO-TCB (E.D. Va. August 24, 2010), aff'd per curiam at Appeal No. 10-2069 (4th Cir. August 11, 2011).

Virginia statutory law recognizes that the deed of trust secures repayment of the note. *See* Va. Code §55-59(1) ("The deed [of trust] shall be construed as given to secure the performance of each of the covenants entered into by the grantor as well as the payment of the primary obligation."). Notably, Virginia Code §55-59(9) specifically authorizes either the beneficiary or noteholder, or holder of a majority interest in a note, to appoint a substitute trustee on the deed of trust securing such debt. Specifically, that statute provides:

> The party secured by the deed of trust, or the holders of greater than fifty percent of the monetary obligations secured thereby, shall have the right and power to appoint a substitute trustee or trustees for any reason and, regardless of whether such right and power is expressly granted in such deed of trust, by executing and acknowledging an instrument designating and appointing a substitute. When the instrument of appointment has been executed, the substitute trustee or trustees named therein shall be vested with all the powers, rights, authority and duties vested in the trustee or trustees in the original deed of trust. . . .

.
Va. Code §55-59(9).   There is no question in this case but that Bank of America is the party secured by the Deed of Trust and statutorily possessed of the power to appoint a substitute trustee.[4]  *See* **Exhibit 1**.  There is absolutely no factual support in the Complaint for Plaintiff's allegation that E-Trade was the noteholder as of October 31, 2009, when the Appointment of Substitute Trustee was executed.  (Compl. ¶ 37.)  The only allegation is that E-Trade was the investor as of November 2010.  (Compl. ¶ 12.)

---

[4] Moreover, Professional had no obligation to ensure that it was properly appointed as substitute trustee and any claims against Professional based on this allegation must be dismissed.  In *Sheppard v. BAC Home Loans Servicing, LP*, the Western District of Virginia dismissed plaintiff's claims for breach of fiduciary duties, similar to the ones here, and held that "*[t]here is no duty … requiring the trustee to ensure either that it was properly appointed or that the entity invoking the sale is the secured party with authority to foreclose.*"  Case No. 3:11-cv-00062, 2012 U.S. Dist. LEXIS 7654 at *25-27 (W.D. Va. Jan. 24, 2012) (emphasis added); *see also Warner v. Clementson*, 254 Va. 356, 361, 492 S.E.2d 655, 657 (1997) ("[t]he powers and duties of a trustee in a deed of trust, given to secure the payment of a debt, are limited and defined by the instrument under which he acts"); *accord Fleet Fin. v. Burke & Herbert Bank and Trust*, 27 Va. Cir. 98, 1992 WL 884461, at *3 (Va. Cir. Ct. 1992).

To the extent that Plaintiff suggests that the owner of the loan must initiate the foreclosure, rather than the noteholder or loan servicer, such distinction has been and must be rejected. *See Larota-Florez v. Goldman Sachs Mortgage Co.*, 719 F.Supp 2d 636, 640-41 (E.D. Va. 2010), aff'd per curium at Appeal No. 10-1523 (4th Cir. July 28, 2011) ("As servicer, Litton has the right to collect payments on behalf of the holder and the right to foreclose upon default. Therefore, Litton's appointment of Professional as substitute trustee under the Deed of Trust was authorized as a matter of contract and agency law.") (emphasis added); *cf. Sprint Communs. Co., L.P. v. APCC Servs.*, 554 U.S. 269, 271 (2008) ("assignee of a legal claim for money owed has standing to pursue that claim in federal court, even when the assignee has promised to remit the proceeds of the litigation to the assignor," and noting that "operators assigned their claims lock, stock, and barrel, and precedent makes clear that an assignee can sue based on his assignor's injuries."). Thus, to the extent that Plaintiff asserts that E-Trade, the investor of the Loan must institute foreclosure proceedings, Plaintiff's argument fails.

In sum, the present challenge to Bayview's right to foreclose is inconsistent with Virginia law, and at minimum, improperly pled. Undisputed is that Bayview is the loan servicer and that Bank of America is the record beneficiary. Plaintiff's unsubstantiated claim that Bank of America was not the holder of the Note at the time of execution of the Appointment of Substitute Trustee, or for that matter is not the current holder of the Note, is not supported by any fact alleged in the Complaint and is insufficient absent, at the very least, an allegation that some third party was making a demand upon him under the Note. Plaintiff's challenge to the foreclosure based upon the appointment must be rejected and Count II must be dismissed.

## VI.   CONCLUSION

For the reasons set forth more fully above, the Complaint fails to allege facts supporting

any of the causes of action asserted against Defendants Law Offices of Shapiro, Alt & Brown, LLP and Professional Foreclosure Corporation of Virginia.  Defendants respectfully requests that Complaint be dismissed, that they be awarded their fees in the action, and that the Court grant such other relief as may be just and proper.

LAW OFFICES OF SHAPIRO, BROWN &
ALT, LLP and
PROFESSIONAL FORECLOSURE
CORPORATION OF VIRGINIA

By_____/s/Megan E. Burns_____
            Of Counsel

John C. Lynch (VSB No. 39267)
Megan E. Burns (VSB No. 35883)
Ethan G. Ostroff (VSB No. 71610)
Counsel for Defendants
TROUTMAN SANDERS LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, Virginia 23462
Telephone:  (757) 687-7765
Facsimile:  (757) 687-1504
E-mail: john.lynch@troutmansanders.com
Email: megan.burns@troutmansanders.com
Email: ethan.ostroff@troutmansanders.com

Bizhan Beiramee, Esq., (VSB #50918)
Matthew D. Cohen, Esq. (VSB #72097)
Beiramee & Cohen, P.C.
6663 B Old Dominion Drive, Third Floor
McLean, Virginia 22101
Phone: (703) 483-9600
Fax:    (703) 483-9599
Email: bbeiramee@beiramee.com

*Co-counsel for Defendant Law Offices of Shapiro, Brown & Alt, LLP
and Professional Foreclosure Corporation of Virginia*

20034797v1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 11th day of July, 2012, I electronically  filed the foregoing pleading with the Clerk of the Court using the CM/ECF System, which will then send a notification of such filing (NEF) to the following:

Leonard A. Bennett, Esq.
Susan M. Rotkis, Esq .
CONSUMER LITIGATION ASSOC., P.C.
763 J. Clyde Morris Blvd., Suite 1A
Newport News, VA 23601

Kristi C. Kelly, Esq.
Scott A. Surovell, Esq.
SUORVELL ISAACS PETERSON & LEVY, PLC
4010 University Drive, 2nd Floor
Fairfax VA 22030

Dale W. Pittman, Esq.
THE LAW OFFICE OF DALE W. PITTMAN, P.C.
The Eliza Spotswood House
112-A West Tabb Street
Petersburg, VA  23803

Matthew J. Erausquin, Esq.
CONSUMER LITIGATION ASSOC., P.C.
1800 Diagonal Road, Suite 600
Alexandria, VA 22314

*Counsel for Plaintiffs*

By:_____/s/ Megan E. Burns_____

Megan E. Burns (VSB No. 35883)
Counsel for Defendant Shapiro, Brown & Alt, LLP
TROUTMAN SANDERS LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, Virginia 23462
Telephone:  (757) 687-7778
Facsimile:  (757) 687-1552
Email: megan.burns@troutmansanders.com

23